J. D. HALL, JR., ET AL V. H. D. HALL

No. A-6314. Decided December 4, 1957.
Rehearing overruled January 22, 1958.
(308 S.W. 2d Series 12)

96

*Robert A. Kilpatrick,* of Cleburne, *Grady, Johnson, Bell & Lee* and *Robert C. Johnson,* all of Dallas for petitioner.

The Court of Civil Appeals erred in holding that the oral contract sued upon does not come within the provisions of Article 3995, subsection 5, the Statute of Frauds of Texas. Jackman v. Anheuser-Busch, 162 S.W. 2d 744, error refused; Paschall v. Enderson, 127 Texas 251, 91 S.W. 2d 1050; Moody v. Jones, 37 S.W. 379.

*James & Mahany,* of Cleburne, and *L. L. James,* of Tyler, for respondent.

In reply to petitioner's point of error, cited Goodwin v. Southtex Land Sales, Inc., 243 S.W. 2d 721, error refused; Hatzfeld v. Walsh, 120 S.W. 525, error refused; Thouvenin v. Lea, 26 Texas 612.

MR. JUSTICE GARWOOD delivered the opinion of the Court.

The respondent-plaintiff, H. D. Hall, sued the petitioners-defendant, J. D. Hall, Jr., et al., a manufacturing partnership, for breach of an oral contract whereby the respondent-plaintiff was to represent the partnership in "developing" a theretofore untapped sales territory, consisting of approximately the northeast quarter of the United States, and selling therein at a 12% commission a principal product of the petitioners-defendant, being a door light called "Visador." Among other defenses the petitioners-defendant pleaded paragraph 5 of Art. 3995, Vernon's Texas Civ. Stats., barring action upon a promise or agreement "which is not to be performed within the space of one year from the making thereof" unless the same "be in writing and signed by the party to be charged therewith * * * ." The applicability of this statute to the contract in the light of jury findings presents the principal question in the case.

The respondent-plaintiff pleaded and introduced evidence to show that such contract was made, and that nothing was said about how long his agency should last, but that, by reason of the character and size of the undertaking and the large responsibility and freedom of action delegated to him in this connection, it was necessarily implied in the contract that the term thereof should be for a reasonable time, as distinguished from being terminable at will. He also pleaded and introduced evidence to prove that such a reasonable time was five years, but that after he had entered into and performed his duties for about

two years, during which he invested some $17,000 of his own funds in the sales development work and had been paid all except about $900.00 of the several thousand dollars of commissions earned by him up to that time, the petitioners-defendant repudiated the contract, depriving him thereby of the large amount of additional commissions, which he would have earned had he been allowed to continue his agency, and also failing to pay him the $900 of earned commissions.

The trial court submitted sundry jury issues, in accordance with the foregoing theory of the case, the answers to all of which were in substance favorable to the respondent-plaintiff, including findings that the agency was terminated without good cause, and that plaintiff's damages as to future commissions were $27,000. The issues relevant to the principal question before us are Nos. 1 and 2, which with their respective answers are as follows:

"Special Issue No. 1: Do you find that at the time of the contract between H. D. Hall and J. D. Hall, Jr., on or about October 13, 1953, it was mutually understood by them both, whether expressed in words or not, that H. D. Hall should develop and sell Visador products in the northern territory for a reasonable time thereafter, or that such arrangements could be terminated at the end of any month by either party?"

To this the jury answered "For a reasonable time."

"Special Issue No. 2: How long do you find from a preponderance of the evidence, after October 15, 1953, was a reasonable time for such agreement, under all the circumstances?"

To this the jury answered "3 yrs."

The court, following motions for judgment on and notwithstanding the verdict, gave judgment for the respondent-plaintiff for the before-mentioned item of $900 accrued commissions, but rendered judgment against him as to the item of $27,000 future commissions on the ground of Art. 3995, supra. The respondent-plaintiff appealed from this latter portion of the judgment, but the petitioners-defendant neither appealed nor filed cross-assignments of error with regard to the $900 item or otherwise.

The Waco Court of Civil Appeals "affirmed" the $900 recovery, from which no appeal had been taken. As to the $27,000

item, the Court held that the statute did not apply to the contract and that, even if it did, it was satisfied by reason of certain correspondence of the petitioners-defendant written between the date of the contract and its repudiation. The court accordingly reversed this portion of the judgment of the trial court and rendered judgment on the verdict for the respondent-plaintiff for $27,000, 298 S.W. 2d 950. With this latter decision we find ourselves unable to concur for the reasons below given.

■ Considering first the question of whether the contract was or was not within the purview of the statute, we find no authority in the briefs, or by our own research, that is very helpful. The basic rule is, of course, that, in order to fall within the statute, it must appear from the terms of the contract that performance cannot be completed within one year. See citations and discussion in Chevalier v. Lane's, Inc., 147 Texas 906, 213 S.W. 2d 530, 6 A.L.R. 2d 1045; also the strong statement of the rule in Goodwin v. Southtex Land Sales, Inc. Texas Civ. App., wr. of er. refused, " no reversible error," 243 S.W. 2d 721, 725. A corollary to the foregoing is that where the term of performance is uncertain in the sense that the contract merely provides for the performance of a particular act or acts, such as the building of a house, which can conceivably be performed within one year, the statute does not apply, however improbable performance within one year may be. Lennard v. Texarkana Lumber Co., Texas Civ. App., 94 S.W. 383. In some cases, it is doubtless also correct to say that, if no period for performance is stated, the statute is inapplicable. See the language in Wright v. Donaubauer, 137 Texas 473, 477, 154 S.W. 2d 637, 639. The difficulty about the instant case is that, although admittedly no period of performance was expressly mentioned, the respondent-plaintiff has recovered *on* the contract as one lasting three years, and has procured a jury finding that it lasted three years.

■ His reasoning as to why the contract falls without the statute is that, since it lacks an express provision as to duration of performance, the term of a reasonable time is implied; that a contract providing a term of a reasonable time is one of uncertain duration and therefore not within the statute; that the finding of a reasonable time to be three years does not alter the status of the contract as one of indefinite duration—does not make it a contract which, by its terms, cannot be performed within one year.

Now it is doubtless true that, in contracts of the general type of the instant one, a term of reasonable duration may be implied,

with the result that they are not void for lack of an essential provision and are not terminable at will. Erskine v. Chevrolet Motor Co., 185 N.C. 479, 117 S.E. 706, 32 A.L.R. 196. See also Hamilton v. Shirley-Self Motor Co., Texas Civ. App., 202 S.W. 2d 952, wr. of er. refused "No Reversible Error;" Cheek v. Metzer, Texas Comm. App., 116 Texas 356, 291 S.W. 860; 10 Texas Jur., p. 413. Agreements such as in the Erskine case are perhaps distinguishable from those of a more simple type of employment, which have been held terminable at will for lack of a term provision in decisions such as East Line & Red River Ry. Co. v. Scott, 72 Texas 70, 75, 10 S.W. 99, and Advance Aluminum Casting Corp. v. Schulkins, Texas Civ. App., 267 S.W. 2d 174. But where the result of implying a term is in effect to extend performance beyond one year, is not the contract necessarily within the statute of frauds?

As above indicated, we find no case very helpful in the matter of whether an implication of a reasonable time means that, for statute of frauds purposes, the contract is to be regarded as one of indefinite duration or, to the contrary, as one in which such performance period in terms of days or years as is later found to be reasonable is fully stated in the contract. Erskine v. Chevrolet Motor Co., supra, did involve an agency situation somewhat like the instant one, did imply the duration of a reasonable time and did hold the North Carolina statute inapplicable. However, the decision does not purport to analyze the foregoing problem and does not even disclose the terms of the statute. The matter must thus be resolved largely on principle.

In the first place, and despite the strict requirement that impossibility of performance within one year must appear from the terms of the contract, we see no reason why the mere fact of duration of performance being *implied* keeps the contract from being within the statute. In the instant case, if Special Issue No. 1 and its answer had been in terms of "three years" instead of "a reasonable time," the respondent-plaintiff would doubtless admit that the contract fell within the statute. What is implied in a contract is as much one of its terms "as though expressly set forth therein." Cheek v. Metzer, supra, 116 Texas 356, 291 S.W. 860, 863.

■ In the second place, the fact that the law recognizes an implication of reasonable time of performance in a given contract does not mean that the latter is necessarily indefinite in this behalf so as to escape the statute. For example, should a food manufacturer and a promotion agent contract for the agent in

person to exhibit and demonstrate the former's products for a full day in every retail grocery store in the world, and should also provide in so many words that "the duration of this contract shall be for a reasonable time," the latter provision would not of itself render the contract one of indefinite duration so as to fall without the statute. The same would seem to be true where the period for performance is implied.

Where the circumstances justify the law in implying any term of performance, they also justify it in defining the period in regular units of time, such as days or years. Ordinarily at least, there would be no point in supplying the particular words "a reasonable time," because the time in days and years is what counts in any dispute, as in the instant case. Actually what the law does is to supply the term in units of time, but using the yardstick of reasonableness in so doing. What it determines in the instant case is that "the contract reasonably implies performance over three years." The respondent-plaintiff, in seeking to uphold a recovery on the contract for commissions to have been earned in the third year thereof, necessarily asserts a contract with a performance term of three years. He could hardly expect to recover specific damages if the term were the merely abstract one of "a reasonable time."

The fact that the court submitted the two jury issues it did obviously makes no difference as to the principle involved. The basic question is how long, in units of time, performance under the contract was to last, and any reasonably clear method of ascertaining this fact could properly have been used. The net result of both finding is that the parties made a contract for the term of three years. It was not that they made a contract of indefinite duration that in some unexplained fashion, without having been amended, was yet also a contract for three years.

The respondent-plaintiff reasons in his "Supplemental Argument" that, where a period is implied, "What would be a reasonable time would depend upon what happened after the contract was made and an important factor would be as to how long the contract ran before it was terminated. * * * If it had been terminated in six months, a reasonable time no doubt would be entirely different than where it ran for two years and a half before it was terminated." Conceivably this reasoning would be sound if the parties themselves had expressly stipulated something such as "a reasonable period in the light of developments to occur from time to time hereafter." But we cannot agree that this is what is implied either in the answer to

Special Issue No. 1 or in the usual case in which we imply a performance period. When the parties omit an express stipulation as to time, it is in accord with human experience and accepted standards of law for us to assume that they meant whatever term of days or years might be reasonable in the light of the circumstances before them at the date of the contract. But it is quite another thing to assume an intent on their part that the period for performance should vary thereafter from one day or month to another in accordance with unforeseen developments, so that, for example, the employer might properly terminate an employment contract within a month after its date but might not be able to terminate the same contract if he waited a year to do so. And what the developments might be that would make today's reasonable period unreasonable tomorrow, or vice versa, opens up a vast field of complications. In Cheek v. Metzer, supra, it was said, "What is a reasonable time * * * must be determined by the circumstances in evidence surrounding the situation of the parties and the subject-matter under which the contract was executed." 291 S.W. 860, 863. The fact that such determination is usually "a question of fact" and is almost always made well after the date of the contract does not make it depend on facts arising after the contract. We regard the argument in question as unsound.

■ As to the theory that the statute, if applicable, was satisfied, the various items of correspondence in question are set out in the opinion of the court (298 S.W. 2d 950. 953, et seq.) and need not be repeated here. Some of them do, indeed, tend to confirm the testimony of the respondent-plaintiff as to the general nature of the contract and its breach. But obviously neither the whole nor any signed portion of it was intended as a memorandum of the contract, and actually some portions of it are inconsistent with the testimony of the respondent-plaintiff to the effect that the arrangement was that of an employer-independent contractor rather than a mere employer-employee relationship terminable at will. This proof of an employer-independent contractor relationship was, of course, in response to one of the principal defenses of the petitioners-defendant to the effect that the arrangement as made was to be terminable at will. If the respondent-plaintiff is to rely on the correspondence as a memorandum of the contract, he cannot at the same time discard the parts that are unfavorable to him and are of equal dignity and genuineness with the parts on which he relies.

Moreover, some of the documents said to reflect essential contractual provisions, such as that concerning commissions, are

not shown to have been signed or to have been part of any signed document, while some fundamental items, such as the territory of the agency, are either not referred to in any signed writing or in any writing at all. Obviously there was no written statement of time of performance.

At the present stage of the litigation the respondent-plaintiff does not appear to rely heavily on the point of actual compliance with the statute, nor are the cases he cites persuasive in this connection. On the other hand, in the rather recent case of Buratti & Montandon v. Tennant, 147 Texas 536, 218 S.W. 2d 842, 9 A.L.R. 2d 742, we held that a signed promise to pay "the usual commission" was not a sufficient compliance with Sec. 22 of Art. 6573a, Vernon's Texas Civ. Stats., barring actions for real estate commissions "unless the promise or agreement upon which such action shall be brought or some memorandum thereof, shall be in writing and signed * * *." *A fortiori* we should reach a similar result in a case like the present under Art. 3995, where the alleged writing or writings omit considerably more than the exact figure of the commission.

■ The petitioners-defendant also complain here, and did in their motion for rehearing in the Court of Civil Appeals, of that court's "affirmance" of the trial court's award of $900 to the respondent-plaintiff by way of earned commissions. However, since they did not except to, file a motion for new trial concerning, nor appeal from, that portion of the judgment nor attack it by cross assignment upon the appeal of the respondent-plaintiff, but, on the contrary, prayed the appellate court unconditionally to "affirm the judgment of the Trial Court," they cannot attack it now. See 3B Texas Jur. (Rev.), Sec. 705, pp. 65-66, and decisions there cited. The point is not one of fundamental error. See Ramsey v. Dunlops, 146 Texas 196, 205 S.W. 2d 979, 983; Worden v. Worden, 148 Texas 356, 224 S.W. 2d 187, 190-191; Texas Co. v. State, 154 Texas 494, 281 S.W. 2d 83, 93.

That part of the judgment of the Court of Civil Appeals which reverses the judgment of the trial court is itself reversed, and the judgment of the trial court is in all things affirmed.

Associate Justice Smith dissenting.

Associate Justice Greenhill not sitting.

Opinion delivered December 4, 1957.

Rehearing overruled January 22, 1958.